IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.   0:21-cv-62064

PURE RAW SUPPLIES, LLC,

     Plaintiff,

v.

NAVAN GLOBAL LLC,

     Defendant.

_____

## **COMPLAINT**

Plaintiff Pure Raw Supplies, LLC ("Plaintiff") sues defendant Pure Raw Supplies, LLC ("Defendant"), and alleges the following:

### **THE PARTIES**

1.     Plaintiff is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business located in Broward County, Florida.  All of Plaintiff's members are individuals who are citizens of the State of Florida.

2.     Defendant is a limited liability company organized and existing under the laws of the State of Wyoming with its principal place of business located at 231 Public Square, Suite 220, Franklin, TN 37065.  All of Defendant's members are individuals who are citizens of the State of Tennessee.

### **JURISDICTION AND VENUE**

3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states.

4.      This Court has jurisdiction over Defendant as it breached a contract requiring performance in this State.

5.      Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b) because the causes of action asserted herein accrued in this district.

## BACKGROUND

6.      On or about February 14, 2020, Plaintiff (as manufacturer) and Defendant (as customer) entered into a "Production Agreement" (the "Agreement") whereby Plaintiff would produce/manufacture certain nutraceutical products for re-sale by Defendant.  A true and correct copy of the Agreement is attached hereto as Exhibit "A."

7.      The Agreement provides for a term of five (5) years but provides that "either party may terminate this Agreement upon six (6) calendar months prior notice."

8.      The Agreement further provides that any notices required to be provided thereunder to Defendant shall be sent to "Navan Global LLC, 231 Public Square, Suite 220, Franklin, TN 37065."

9.      Defendant is a multi-level-marketing company focused on selling nutraceutical products.

10.     Plaintiff entered into the Agreement with Defendant as a result of Defendant's significant 'pipeline' of distributors and expectation that Defendant would be ordering tens of thousands of units of the subject product on a quarterly basis.

11.     The Agreement reflects this expectation as Defendant is provided an exclusive license during the contract term to purchase the subject product, subject to Defendant meeting certain minimums during a rolling quarterly basis (beginning July 1, 2021).

12.     From July 1, 2021 – January 31, 2022, Defendant is required to order and pay for

an average of 25,000 units per rolling quarter.

13.     Defendant's CEO, manager, and majority member is Haskell Knight a/k/a Trey Knight.  For lack of a better word, Mr. Knight is essentially the public 'face' of the company and is the person that Defendant's thousands of distributors associate with the company.

14.     On May 6, 2021, a grand jury sitting in the Middle District of Louisiana returned an eight-count indictment against Mr. Knight and his wife (Emily Knight) for conspiracy to commit wire fraud (Count One) and wire fraud (Counts Two through Eight).

15.     Mr. and Mrs. Knight are currently subject to prosecution for those alleged crimes (and, upon information and belief, are being investigated for further crimes yet to be charged).

16.     As a direct and proximate result of the federal criminal charges against Mr. and Mrs. Knight, Defendant experienced a substantial downturn in its business with hundreds (if not thousands) of distributors ceasing their relationship with Defendant and moving onto some other multi-level-marketing company.

17.     With distributors leaving Defendant in droves, Defendant's sales of and orders for the subject nutraceutical product likewise have plummeted.

18.     Given Defendant's downturn in sales and public relations issues with the federal prosecution of its principal, it is little surprise that Defendant failed to meet its contractual minimum obligations for the first required quarter (July 1, 2021 – September 30, 2021).

19.     Defendant was required to order and pay for an average of 25,000 units during this initial quarter, but Defendant ordered and paid for only 10,000 units – despite written and verbal warnings/explanations to Defendant as to the Agreement's requirements.

20.     Defendant's failure to order and pay for the remaining 15,000 units during the July 1, 2021 – September 30, 2021 quarter resulted in losses to Plaintiff of, at minimum, $90,000.00

DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

(the contract price for the 15,000 units).

21.     As a result of Defendant's failure to meet the contractual minimums, the Agreement specifically provides Plaintiff with an immediate right to "renegotiate or terminate" Defendant's rights under the Agreement.

22.     Given the ongoing criminal prosecution of Mr. Knight and the related shrinking of Defendant's business, Plaintiff decided in June 2021 to exercise its right under ¶ 1 of the Agreement to terminate the Agreement upon six (6) calendar months' notice.

23.     On June 24, 2021, Plaintiff sent a letter (the "Termination Letter") via United States Certified Mail to Defendant whereby Plaintiff provided formal notice of Plaintiff's election to terminate the Agreement as of December 31, 2021.  A true and correct copy of the Termination Letter is attached hereto as Exhibit "B."  The Termination Letter was sent to Defendant's corporate headquarters (at an address that was provided by Defendant as the address specified in the Agreement for notices was no longer valid because Defendant had moved several times thereafter) and to its registered agent in Sheridan, WY.

24.     The Termination Letter was likewise sent via e-mail, on June 25, 2021, to three of Defendant's senior management (Paul Odom, Tess Knight, and Trey Knight).

25.     After Plaintiff sent the Termination Letter, Paul Odom (one of Defendant's senior management) personally traveled to Plaintiff's offices in Florida to request that Plaintiff reconsider its termination so that the parties could continue working together.  A few weeks later, Mr. Odom again came to Plaintiff's offices in Florida (this time with Tess Knight, another member of Defendant's senior management term) to ask for the same rescinding of the termination.   In response, Plaintiff unequivocally informed Defendant's representatives that the termination would not be revoked.

26.     Following Plaintiff making it clear to Defendant that the Agreement was indeed being terminated, Defendant has engaged in a pattern of erratic behavior designed to interfere with Plaintiff's ability to market its zeolite product to other interested parties.

27.     Defendant has stated to multiple distributors that the Agreement is not being terminated, that Defendant somehow has a right of first refusal (when so such right exists under the Agreement), and that Defendant will remain the exclusive distributor of the zeolite product in 2022 and beyond.

28.     Further, on September 29, 2021 (one day prior to the end of the first rolling quarter under the Agreement), Defendant sent a purported 'cease and desist' letter to Plaintiff and AmpLIFEi (a company Plaintiff intended to sell its zeolite product after the December 31, 2021 expiration of the Agreement) in which Defendant threatens legal action against both Plaintiff and AmpLIFEi while simultaneously stating that Defendant is "willing and able to purchase the requisite amount of product" under the Agreement.

29.     However, as of October 1, 2021 (two days later), Defendant failed entirely to meet its contractual minimums.

30.     All conditions precedent to the filing of this action have been performed, occurred, or been waived.

## COUNT ONE: DECLARATORY JUDGMENT

31.     Plaintiffs re-allege paragraphs 1 through 30 as if fully set forth herein.

32.     An actual controversy presently exists between Plaintiff and Defendant concerning their respective rights, obligations, and liabilities under the Agreement.

33.     Plaintiff contends that the Agreement was terminated, effective December 31, 2021, pursuant to the Termination Letter.   Defendant contends that the Agreement was not

DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

terminated, and that Defendant somehow has a 'right of first refusal' that allows it to continue serving as the exclusive distributor of Plaintiff's zeolite product in 2022 and beyond.

34.     Plaintiff further contends that Defendant was required to order a total of 25,000 units of product during the July 1, 2021 – September 30, 2021 quarter, that Defendant failed to purchase the requisite amount of product, and that such failure entitles Plaintiff to immediately terminate the Agreement.

35.     By virtue of its September 29, 2021 'cease and desist' letter, Defendant contends that it has not failed to meet the contractual minimums and somehow still has the ability to order more product from Plaintiff, thus placing Plaintiff in a position that it cannot sell its products to others and recoup its losses for Defendant's failures.

36.     There is a bona fide actual and justiciable controversy and a present and practical need for a declaration in connection therewith.

37.     The parties have an actual, present, adverse, and antagonistic interest in the subject matter of this lawsuit.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a declaratory judgment, adjudging and declaring that: (a) the Agreement was terminated, effective December 31, 2021, pursuant to the Termination Letter; (b) that Plaintiff has a right to immediately terminate the Agreement for Defendant's failure to meet contractual minimums; and (c) such other and further relief as the Court deems just and proper.

Dated: October 1, 2021.

DESOUZA LAW, P.A.
3111 N. University Drive
Suite 301
Coral Springs, FL 33065
Telephone:  (954) 603-1340
DDesouza@desouzalaw.com

DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

By: /s/ Daniel DeSouza, Esq.
  Daniel DeSouza, Esq.
  Florida Bar No.:  19291

4832-5907-1308, v. 1

DESOUZA LAW, P.A.
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (954) 603-1340

# EXHIBIT "A"

## PRODUCTION AGREEMENT

This Production Agreement is made and entered into on this 14th day of February, 2020 by and between Navan Global LLC, a Montana limited liability company with its registered office located at 231 Public Square, Suite 220, Franklin TN 37065 (hereinafter referred to as Client), and Pure Raw Supplies, LLC., a Florida corporation with its registered office at 1537 NW 65th Avenue, Plantation FL 33313 (hereafter referred to as Manufacturer) as follows:

RECITALS:

WHEREAS, Manufacturer is in the business of manufacturing, sourcing, contracting, packaging and providing other miscellaneous services related to various products and

WHEREAS, Client sells branded products under the brand name of Navan Global (a direct sales company), and has previously engaged the services of Manufacturer to manufacture and/or produce the product during the term of this Agreement upon the terms and conditions set forth herein; and

WHEREAS, Manufacturer has agreed to produce and/or manufacture products on the terms and conditions set forth herein;

NOW THEREFORE, for good and valuable consideration, the sufficiency of which is acknowledged by the parties hereto and evidenced by their signatures below,

IT IS HEREBY AGREED AS FOLLOWS:

1. **Term of Agreement**:  This Agreement shall be effective as of February 14, 2020 (the Effective Date) regardless of the date of final execution of this document, and shall continue thereafter for a period of five years thereafter.  The Agreement shall automatically renew for additional terms of five (5) years unless either party gives notice, at least ninety days prior to the end of the term, of its intention not to renew.  During the initial term and any renewal term, either party may terminate this Agreement upon six (6) calendar months prior notice.

2. **Production Commitment**:  During the term of this Agreement, Client agrees to submit Purchase Orders to Manufacturer for production of agreed products, which shall be accepted by Manufacturer unless Manufacturer cannot reasonably meet the terms of the Purchase Order, in which case Manufacturer shall contact Client within five (5) business days after receipt so that an appropriate revised Purchase Order may be timely issued. Failure to so inform Client shall constitute Manufacturer's acceptance of the Purchase Order.

3. **Grant of Exclusive License / Rights to Purchase.**  Subject to the terms and conditions of this Agreement, Pure Raw Supplies LLC hereby grants Navan Global LLC and Navan Global LLC accepts, an exclusive right to purchase the Product in connection with

advertising, promotion, manufacturing, packaging, shipment, distribution and sale of the Products worldwide (the "territory") in the direct sales and multi-level marketing channels of trade (the "authorized channel of trade"). The parties hereby agree that the grant of this exclusive license shall mean that, no other party shall have the right, directly or indirectly, in the authorized channel of trade in the territory to manufacture, advertise, promote, package, ship, distribute or sell the Products, or any products containing Zeolite, or any product which incorporates, uses or relies on zeolite or any reasonable variation thereof, unless through the express written consent of Navan Global, LLC. or through release of new products under Section 7 of this Agreement.

Following the first year after the receipt of Product (February 2020 – January 31, 2021) the minimum order shall increase every six months. In explanation:

From July1 2021 – January 31, 2022: Navan must order and pay for an average of 25,000 units per quarter.

From February 1, 2022 – July 31, 2022: Navan must order and pay for an average of 40,000 units per quarter.

From August 1, 2022 – January 31, 2023: Navan must order and pay for an average of 55,000 units per quarter.

From February 1, 2023: Navan must order and pay for an average of 75,000 units per quarter.

For purposes of determining whether the minimum orders are timely and properly executed, the parties shall operate on a rolling three (3) month basis (the "evaluation period"), i.e., purchase orders in one or more months in a relevant evaluation period may be less than the minimum orders required, however, that on average over the relevant evaluation period, the minimum order is made in full to Pure Raw Supplies. If Navan does not meet the performance standards set forth in this paragraph (3), Pure Raw Supplies shall have the right to renegotiate or terminate the appointment created under this agreement.

4. **Credit Limit**:   Client shall have a credit limit initially of 50% deposit made at time of issuing of Purchase Order with the remaining 50% balance paid upon delivery of the shipment of product based on shipping instructions supplied by Client. Navan will issue a blanket purchase order and will issue release amounts for product and payment of deposit and balance will be made on the release ordered.

5. **Production Time**:  Manufacturer agrees to fill each Purchase Order submitted by Client within the time agreed upon by the parties in the Purchase Order. However, and notwithstanding anything to the contrary herein, the parties agree that Manufacturer shall complete production within six (6) calendar weeks from receipt of the Purchase Order unless otherwise agreed.

6. **Formula Ownership and Changes**:  The parties agree that all formulas are, and shall remain exclusively, the manufacturer, and that the manufacturing of the product by Manufacturer shall not transfer any right, title or interest to any of the formulas to the client. The production of the product will be made exclusively for the client and a separate license agreement will be implemented to detail the relationship and intellectual property ownership.

7. **Future Products and Product Development.**  In addition, Pure Raw Supplies shall grant Navan Global LLC the right of first refusal for any and all new products (the "new products") for consideration in the territory.  Navan Global LLC will be given a maximum period of sixty (60) days to review the New Products before other potential customers are solicited.

8. **Component Purchases/Surplus Inventory**:   During the term of this Agreement, Manufacturer may purchase necessary raw materials on an annual, quarterly, monthly or as needed basis, to supply the necessary product volume as submitted in the Client Purchase Orders.  In the event that there is any excess inventory of raw materials, which for purposes of this Agreement shall be inventory that has been purchased by Manufacturer for production of Client, but remains unused for a period of twelve months following the purchase by Manufacturer, Client shall purchase from Manufacturer the inventory at Manufacturer's cost. Client shall take possession of the inventory at the time of payment, and may utilize the inventory purchased for any purpose it determines in its sole and absolute discretion.

   Prior to Client being obligated for such purchase, Manufacturer shall use its best efforts to utilize the raw materials for other products it manufactures.

9. **Unplanned Component Price Increases**:  In the event that the cost of any raw materials purchased by Manufacturer to fill Client Purchase Orders increases by more than five percent (5%), Manufacturer may pass such cost increase on to Client, provided that Manufacturer shall submit reasonable documentation to Client substantiating the amount of the price increase.  In the event the overall product price increases more than 5 percent during the term of this Agreement, Client shall have the right to cancel the Agreement upon thirty days written notice to Manufacturer.

10. **Right of Inspection**:  Client shall have the right to inspect the Manufacturer facility from time to time during Manufacturer's normal business hours during production of Client product only upon agreement by Manufacturer and at a convenient time as established by Manufacturer, provided however, that Manufacturer may not unreasonably withhold its consent, and that there shall be a rebuttable presumption that twenty-four (24) hours notice for a visit during normal business hours of Manufacturer is reasonable.  In addition, if Manufacturer shall have a right of inspection for any of its vendors that supply raw materials utilized in production, then Client may upon approval of Manufacturer send a designated representative of the company with a representative of Manufacturer to inspect such supplier's facilities.

11. **Breach and Opportunity to Cure**:  In the event either party hereto is alleged to have breached any of the terms and conditions of this Agreement, the non-breaching party shall submit notice of such breach in writing to the breaching party setting forth the alleged breach.  The party to have allegedly breached the agreement shall have forty-five days from the date of such notice in which to cure the alleged breach.  If the alleged breach is cured within the forty-five day cure period, the Agreement shall remain in effect as though no breach had occurred.

12. **Ownership of Trademarks, Service Marks or other Intellectual Property**:  The trademarks, service marks, patents and other intellectual property of Client shall remain the sole property of Client and nothing herein shall transfer any right, title or interest of the same to Manufacturer.  Likewise, the trademarks, service marks, patents, and other intellectual property of Manufacturer shall remain the sole property of Manufacturer and nothing herein shall transfer any right, title or interest of the same to Client.

13. **Confidentiality and Nondisclosure**:  This Agreement is confidential, and shall not be disclosed by either party to any third party who is not a party to this Agreement without the prior written consent of the other party hereto.  In addition, Manufacturer shall hold confidential and shall not use for its own or a third party's benefit, or disclose to any other person any confidential information in its possession related to the business of all products sales, including without limitation formulas, manufacturing processes, ingredient sources, registration information, and other information as to which Client derives a financial benefit from its not being generally known or readily ascertainable, without the express written permission of Client.  Client shall grant permission to disclose so long as Manufacturer has demonstrated a reasonable need to disclose and has put in place, through agreement, protective order, or applicable professional standards regarding nondisclosure, sufficient protection for the information of Client.  Manufacturer shall not manufacture for any third party any product that it also manufactures for Client using Client's formulas or materially the same formulas, under any brand name, without Client's express written permission.

14. **Indemnification; Insurance**.  Pure Raw Supplies agrees to indemnify, defend and hold harmless Navan Global from and against any claim, demand, action, proceeding or cause of action made or brought against Navan Global LLC by any third party, including, without limitation, any judgement rendered against Navan Global LLC in any legal action and reasonable attorney's fees and expenses incurred by Navan Global LLC in defending any such claim brought against it except as otherwise provided below ("damages"), arising out of or resulting from (i) a breach of this agreement by Pure Raw Supplies; (ii) product liability attributable to the products or (iii) the violation or infringement of any trademark, trade dress or other intellectual property right relating to the Product or other specifications or materials selected by Pure Raw Supplies, provided that none of such occurrences are caused by the negligence or willful misconduct of Navan Global.

Navan Global agrees to indemnify, defend and hold harmless Pure Raw Supplies from and against any claim, demand, action or cause of action which is made against Pure Raw Supplies by any third party, including, without limitation, any judgement rendered against

Pure Raw Supplies in any such action and reasonable attorneys' fees and expenses incurred by Pure Raw Supplies in defending any such claim brought against it to the extent arising out of or resulting from (i) a breach of this agreement with Navan Global LLC, (ii) the improper promotion of Products by Navan Global LLC or its respective employees or agents  unless such claim results from the incorrect product profile information supplied by Pure Raw Supplies: or (iii) the violation or infringement of any trademark or trade dress rights relating to  the Products (other than those owned by Pure Raw Supplies and licensed to Navan Global LLC hereunder) or other specifications or materials selected by Navan Global LLC, provided that none of such occurrences are caused by the negligence or willful misconduct of Pure Raw Supplies.

Upon the occurrence of an event which would give rise to a right of indemnification under this Agreement, the party claiming the right to indemnification (the "Indemnitee") shall give prompt written notice to the other party providing reasonable details of the nature of the event and basis of the indemnity claim. The party obligated to provide the indemnification (the "Indemnitor") shall then have the right, at its own expense and with counsel of its choice, to defend, contest or otherwise protect against any such suit, action, investigation, claim or proceeding ("Action"). The Indemnitee shall also have the right, but not the obligation, to participate at its own expense in the defense thereof with counsel of its choice reasonably acceptable to the Indemnitee. The Indemnitee agrees to cooperate to the extent reasonably necessary to assist the Indemnitor in defending, contesting or otherwise protesting against any such Action provided that the reasonable cost in doing so shall be paid by the Indemnitor. If the Indemnitor fails within thirty (30) days after receipt of such notice to (i) notify the Indemnitee of its intent to defend, or (ii) defend, contest or otherwise protect against such Action, or fails to diligently continue to provide such defense after undertaking to do so, the Indemnitee shall have the right upon ten (10) days' prior written notice to the Indemnitor, to defend, settle and satisfy any such Action and recover the costs of the same from the Indemnitor.
The provisions of this Section 15 shall survive the expiration of the Term or any other termination of this Agreement.

The parties shall each maintain in full force and effect throughout the Term product liability insurance with limits of not less than three million dollars ($3,000,000) per occurrence, three million dollars ($3,000,000) in the aggregate.  Such insurance shall name Navan Global LLC and its affiliates as an additional insured, shall have broad form vendor's coverage, and shall be placed with an insurance company which has a most recent rating given by Best's Key Rating Guide of at least an "A" (Excellent) or VII or above, or in such other company as Navan Global LLC may approve.  Each party agrees to promptly deliver certificates of said insurance to the other party.  The insurance required by this Agreement shall be primary with respect to any other insurance available to each party and shall contain a waiver of subrogation by such party's insurance carrier against the other party and its insurance carrier with respect to all obligations assumed by each party pursuant to this Agreement. Each party will provide a copy of any contract of insurance required under this Agreement, upon request from the other party.

15. **Recall**.  If the Product becomes the subject of a recall by any governmental agency or in the event a governmental agency requests or suggests that the Product be withdrawn from any level of the market, or the consumer, or in the event Navan Global LLC  or  Pure Raw Supplies shall deem that such a recall is necessary, Pure Raw Supplies shall indemnify and reimburse Navan Global LLC for:

   a.  All costs and expenses of notifying the trade and/or consumers of said withdrawal to the level of acceptance to the regulatory agency;
   b.  All freight charges actually incurred by Navan Global LLC, or paid by Navan Global LLC to its customer, for retrieval of the Products;
   c.  All service charges or other monies actually paid by Navan Global LLC to its customers in line with normal practices in connection with the retrieval of the Products; and,
   d.  All costs and reasonable counsel fees incurred by Navan Global LLC in connection with such recall or market withdrawal.

As soon as possible after notification of the recall,  Pure Raw Supplies shall replace the recalled Products with salable Products free of charge to Navan Global LLC.  In lieu of replacement, Pure Raw Supplies will, if requested by Navan Global LLC, refund the purchase price of such Products or credit Navan's account therefore.

Navan Global LLC shall indemnify Pure Raw Supplies if a recall or market withdrawal of the Product specifically results from marketing efforts caused by Navan Global LLC or its distributors.  In the event such a recall or market withdrawal would occur, Navan Global LLC shall solely bear all costs related to the event.

In the event of a recall or seizure, neither party shall make any statement to the press or public concerning the matter without first notifying the other of the statement to be made.

16.  **Notices**:  Any notices required to be given hereunder shall be deemed to have been given on the date such notice is received, and may be sent by United States Mail, Certified with Return Receipt Requested, by Personal Delivery, by Overnight Courier with delivery confirmation, or by fax transmission with delivery confirmation, to the following:

If to MANUFACTURER:

   Pure Raw Supplies LLC
   1537 NW 65th Avenue
   Plantation FL  33313

If to Client:

   Navan Global LLC
   231 Public Square
   Suite 220
   Franklin TN 37065

17. **Governing Law & Jurisdiction**:  This Agreement shall be governed by the laws of the State of Tennessee.  In the event an action is brought between the parties hereto for the interpretation or enforcement of this Agreement, such action if brought by Client shall be brought in the State or Federal Courts of Tennessee, in the County of Williamson.

18. **Attorney Fees**: In the event suit or action is brought by either party under this Agreement to enforce any of its terms, or in any appeal therefrom, it is agreed that the prevailing party shall be entitled to an award of its reasonable attorney fees and costs of suit incurred.

19. **Computation of Time**:  In computing any period of time pursuant to this Agreement, the day of the act, event or default from which the designated period of time begins to run shall be included, unless such day is a Saturday, Sunday or legal holiday.  In such event the period shall being to run on the next day which is not a Saturday, Sunday or legal holiday.

20. **Titles & Captions**: All section titles or captions contained in this Agreement are for convenience only and shall not be deemed to be a part of the context nor affect the interpretation of this Agreement.

21. **Agreement Binding**:  This Agreement shall be binding upon the parties hereto, as well as their heirs, administrators, executors, successors and assigns.  This Agreement may not be assigned to any third party without the prior written consent of the other party hereto, which consent shall not unreasonably be withheld.

22. **Authorization**:  Each party hereto warrants that it is in the good standing in the jurisdiction of its origin, and that all necessary formalities required by its organizational and operational documents have been complied with to enter into this Agreement. Each party also warrants to the other that the party executing this Agreement is duly authorized to do so.

23. **Further Actions and Documents**:  Each party agrees that it shall act in good faith and execute such documents and take such actions as may be necessary from time to time to carry out the intent of this Agreement.

24. **Parties in Interest**:  Nothing herein shall be deemed or construed to be for the benefit of any third party.

25. **Force Majure**:  Neither party hereto shall be obligated to perform its obligations herein if such obligations are interrupted by acts of God, war, civil unrest, strikes, labor stoppage, natural disaster or the like that would render the performance of such party impossible.

26. **Entire Agreement**:  This document represents the entire agreement between the parties hereto and supersedes and replaces all other agreements and negotiations regarding the subject matter herein, whether written or oral.  This Agreement may only be modified in writing executed by both parties hereto.

27. **<u>Savings Clause</u>**: If any provision of this Agreement, or the application of such provision to any person or circumstance, shall be held by any court of competent jurisdiction to be invalid, only so much of the terms as are necessary shall be removed or modified to render the offending term or terms enforceable. All other terms and conditions of the Agreement shall remain unaffected. In witness whereof, the parties have executed this Agreement effective the day and year first written above.

**Pure Raw Supplies, LLC**                    **Navan Global, LLC**


Rik J Deitsch                                            By:   Paul Odom
Its:  President                                          Its:   VP Operations

## NAVAN GLOBAL, LLC.
*MAKE WAY FOR THE GOOD*

231 Public Square #220
Franklin, TN 37064

**PURCHASE ORDER**
PO #40001
DATE:  FEB 14, 2020

**TO:**
Pure Raw Supplies LLC
Rik J Deitsch
7915 NW 111TH WAY
PARKLAND, FL 33076

**SHIP TO:**
Navan Global
C/O SKU2U
14401 Sovereign Rd #101
Fort Worth, TX 76155

| SALESPERSON | P.O. NUMBER | REQUISITIONER | SHIPPED VIA | TERMS |
|---|---|---|---|---|
| N/A | N/A | Paul Odom/ Tess Knight | TBA | 50% Deposit 50% Net30 |

**THIS IS A 50,000 BLANKET PO THAT WE CAN DRAW UPON IN 5,000 UNIT INCREMENTS. TERMS ARE BASED ON 5,000 UNIT DRAW.**

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| 50,000 | Detox – Zeolite Product | $5.86 | $293,000 |
|  | Packaging – 1 oz Amber Glass Bottle with Glass Dropper |  |  |
|  | Label – Custom Design – Art Provided by NAVAN |  |  |
|  | Testing – Micro Panel – Finished Goods |  |  |
|  | Testing – COA per Batch – Finished Goods, includes Heavy Metals, Terpenes, and Cannabinoids |  |  |
|  | Shipping – Included |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  | SUBTOTAL | $293,000 |
|  |  | SALES TAX |  |
|  |  | SHIPPING & HANDLING |  |
|  |  | TOTAL DUE | $293,000 |

If you have any questions concerning this purchase order, contact Paul Odom at (407) 446-2013 or Tess Knight at (515) 305 – 6539.



**1537 NW 65ᵗʰ Avenue**
**Plantation, Florida 33313**
**O: (954)509-0911 ● F: (877)895-5647**



# EXHIBIT "B"

**Navan Global LLC**
**106 Mission Court, Unit 1101**
**Franklin, TN 37067**

June 24, 2021

**Attention: Trey Knight, CEO**

**Re: Contract between Navan Global LLC and Pure Raw Supplies, LLC**

Be advised that this letter is formal notification of the termination of the Production Agreement executed on February 14, 2020:

**In accordance with Paragraph 1 of the Agreement, Term of Agreement:**

> During the initial term and any renewal term, either party may terminate this Agreement upon six (6) calendar months prior notice.

By these terms, the Agreement will be fully terminated as of December 31, 2021. As such, no orders will be accepted for the production of product after November 15, 2021 to allow the contractual six weeks lead time for production.

Yours truly,

Benjamin Silber
PRS Counsel

Certified letter sent to Trey Knight: Navan Corporate Headquarters (address above)
CC: Paul Odom, Tess Knight, Registered Agents Inc. 30 N Gould St. Suite R, Sheridan, WY 82801

PRODUCTION AGREEMENT

This Production Agreement is made and entered into on this 14th day of February, 2020 by and between Navan Global LLC, a Montana limited liability company with its registered office located at 231 Public Square, Suite 220, Franklin TN 37065 (hereinafter referred to as Client), and Pure Raw Supplies, LLC., a Florida corporation with its registered office at 1537 NW 65th Avenue, Plantation FL 33313 (hereafter referred to as Manufacturer) as follows:

RECITALS:

WHEREAS, Manufacturer is in the business of manufacturing, sourcing, contracting, packaging and providing other miscellaneous services related to various products and

WHEREAS, Client sells branded products under the brand name of Navan Global (a direct sales company), and has previously engaged the services of Manufacturer to manufacture and/or produce the product during the term of this Agreement upon the terms and conditions set forth herein; and

WHEREAS, Manufacturer has agreed to produce and/or manufacture products on the terms and conditions set forth herein;

NOW THEREFORE, for good and valuable consideration, the sufficiency of which is acknowledged by the parties hereto and evidenced by their signatures below,

IT IS HEREBY AGREED AS FOLLOWS:

1. **Term of Agreement**:  This Agreement shall be effective as of February 14, 2020 (the Effective Date) regardless of the date of final execution of this document, and shall continue thereafter for a period of five years thereafter.  The Agreement shall automatically renew for additional terms of five (5) years unless either party gives notice, at least ninety days prior to the end of the term, of its intention not to renew.  During the initial term and any renewal term, either party may terminate this Agreement upon six (6) calendar months prior notice.

2. **Production Commitment**:  During the term of this Agreement, Client agrees to submit Purchase Orders to Manufacturer for production of agreed products, which shall be accepted by Manufacturer unless Manufacturer cannot reasonably meet the terms of the Purchase Order, in which case Manufacturer shall contact Client within five (5) business days after receipt so that an appropriate revised Purchase Order may be timely issued. Failure to so inform Client shall constitute Manufacturer's acceptance of the Purchase Order.

3. **Grant of Exclusive License / Rights to Purchase.**  Subject to the terms and conditions of this Agreement, Pure Raw Supplies LLC hereby grants Navan Global LLC and Navan Global LLC accepts, an exclusive right to purchase the Product in connection with

advertising, promotion, manufacturing, packaging, shipment, distribution and sale of the Products worldwide (the "territory") in the direct sales and multi-level marketing channels of trade (the "authorized channel of trade"). The parties hereby agree that the grant of this exclusive license shall mean that, no other party shall have the right, directly or indirectly, in the authorized channel of trade in the territory to manufacture, advertise, promote, package, ship, distribute or sell the Products, or any products containing Zeolite, or any product which incorporates, uses or relies on zeolite or any reasonable variation thereof, unless through the express written consent of Navan Global, LLC. or through release of new products under Section 7 of this Agreement.

Following the first year after the receipt of Product (February 2020 – January 31, 2021) the minimum order shall increase every six months. In explanation:

From July1 2021 – January 31, 2022: Navan must order and pay for an average of 25,000 units per quarter.

From February 1, 2022 – July 31, 2022: Navan must order and pay for an average of 40,000 units per quarter.

From August 1, 2022 – January 31, 2023: Navan must order and pay for an average of 55,000 units per quarter.

From February 1, 2023: Navan must order and pay for an average of 75,000 units per quarter.

For purposes of determining whether the minimum orders are timely and properly executed, the parties shall operate on a rolling three (3) month basis (the "evaluation period"), i.e., purchase orders in one or more months in a relevant evaluation period may be less than the minimum orders required, however, that on average over the relevant evaluation period, the minimum order is made in full to Pure Raw Supplies. If Navan does not meet the performance standards set forth in this paragraph (3), Pure Raw Supplies shall have the right to renegotiate or terminate the appointment created under this agreement.

4. **Credit Limit**:   Client shall have a credit limit initially of 50% deposit made at time of issuing of Purchase Order with the remaining 50% balance paid upon delivery of the shipment of product based on shipping instructions supplied by Client. Navan will issue a blanket purchase order and will issue release amounts for product and payment of deposit and balance will be made on the release ordered.

5. **Production Time**: Manufacturer agrees to fill each Purchase Order submitted by Client within the time agreed upon by the parties in the Purchase Order. However, and notwithstanding anything to the contrary herein, the parties agree that Manufacturer shall complete production within six (6) calendar weeks from receipt of the Purchase Order unless otherwise agreed.

6. **Formula Ownership and Changes**:  The parties agree that all formulas are, and shall remain exclusively, the manufacturer, and that the manufacturing of the product by Manufacturer shall not transfer any right, title or interest to any of the formulas to the client. The production of the product will be made exclusively for the client and a separate license agreement will be implemented to detail the relationship and intellectual property ownership.

7. **Future Products and Product Development.**  In addition, Pure Raw Supplies shall grant Navan Global LLC the right of first refusal for any and all new products (the "new products") for consideration in the territory.  Navan Global LLC will be given a maximum period of sixty (60) days to review the New Products before other potential customers are solicited.

8. **Component Purchases/Surplus Inventory**:   During the term of this Agreement, Manufacturer may purchase necessary raw materials on an annual, quarterly, monthly or as needed basis, to supply the necessary product volume as submitted in the Client Purchase Orders.  In the event that there is any excess inventory of raw materials, which for purposes of this Agreement shall be inventory that has been purchased by Manufacturer for production of Client, but remains unused for a period of twelve months following the purchase by Manufacturer, Client shall purchase from Manufacturer the inventory at Manufacturer's cost. Client shall take possession of the inventory at the time of payment, and may utilize the inventory purchased for any purpose it determines in its sole and absolute discretion.

   Prior to Client being obligated for such purchase, Manufacturer shall use its best efforts to utilize the raw materials for other products it manufactures.

9. **Unplanned Component Price Increases**:  In the event that the cost of any raw materials purchased by Manufacturer to fill Client Purchase Orders increases by more than five percent (5%), Manufacturer may pass such cost increase on to Client, provided that Manufacturer shall submit reasonable documentation to Client substantiating the amount of the price increase.  In the event the overall product price increases more than 5 percent during the term of this Agreement, Client shall have the right to cancel the Agreement upon thirty days written notice to Manufacturer.

10. **Right of Inspection**:  Client shall have the right to inspect the Manufacturer facility from time to time during Manufacturer's normal business hours during production of Client product only upon agreement by Manufacturer and at a convenient time as established by Manufacturer, provided however, that Manufacturer may not unreasonably withhold its consent, and that there shall be a rebuttable presumption that twenty-four (24) hours notice for a visit during normal business hours of Manufacturer is reasonable.  In addition, if Manufacturer shall have a right of inspection for any of its vendors that supply raw materials utilized in production, then Client may upon approval of Manufacturer send a designated representative of the company with a representative of Manufacturer to inspect such supplier's facilities.

11. **Breach and Opportunity to Cure**:  In the event either party hereto is alleged to have breached any of the terms and conditions of this Agreement, the non-breaching party shall submit notice of such breach in writing to the breaching party setting forth the alleged breach.  The party to have allegedly breached the agreement shall have forty-five days from the date of such notice in which to cure the alleged breach.  If the alleged breach is cured within the forty-five day cure period, the Agreement shall remain in effect as though no breach had occurred.

12. **Ownership of Trademarks, Service Marks or other Intellectual Property**:   The trademarks, service marks, patents and other intellectual property of Client shall remain the sole property of Client and nothing herein shall transfer any right, title or interest of the same to Manufacturer.   Likewise, the trademarks, service marks, patents, and other intellectual property of Manufacturer shall remain the sole property of Manufacturer and nothing herein shall transfer any right, title or interest of the same to Client.

13. **Confidentiality and Nondisclosure**:  This Agreement is confidential, and shall not be disclosed by either party to any third party who is not a party to this Agreement without the prior written consent of the other party hereto.  In addition, Manufacturer shall hold confidential and shall not use for its own or a third party's benefit, or disclose to any other person any confidential information in its possession related to the business of all products sales, including without limitation formulas, manufacturing processes, ingredient sources, registration information, and other information as to which Client derives a financial benefit from its not being generally known or readily ascertainable, without the express written permission of Client.   Client shall grant permission to disclose so long as Manufacturer has demonstrated a reasonable need to disclose and has put in place, through agreement, protective order, or applicable professional standards regarding nondisclosure, sufficient protection for the information of Client.  Manufacturer shall not manufacture for any third party any product that it also manufactures for Client using Client's formulas or materially the same formulas, under any brand name, without Client's express written permission.

14. **Indemnification; Insurance**.  Pure Raw Supplies agrees to indemnify, defend and hold harmless Navan Global from and against any claim, demand, action, proceeding or cause of action made or brought against Navan Global LLC by any third party, including, without limitation, any judgement rendered against Navan Global LLC in any legal action and reasonable attorney's fees and expenses incurred by Navan Global LLC in defending any such claim brought against it except as otherwise provided below ("damages"), arising out of or resulting from (i) a breach of this agreement by Pure Raw Supplies; (ii) product liability attributable to the products or (iii) the violation or infringement of any trademark, trade dress or other intellectual property right relating to the Product or other specifications or materials selected by Pure Raw Supplies, provided that none of such occurrences are caused by the negligence or willful misconduct of Navan Global.

Navan Global agrees to indemnify, defend and hold harmless Pure Raw Supplies from  and against any claim, demand, action or cause of action which is made against Pure Raw Supplies by any third party, including, without limitation, any judgement rendered against

Pure Raw Supplies in any such action and reasonable attorneys' fees and expenses incurred by Pure Raw Supplies in defending any such claim brought against it to the extent arising out of or resulting from (i) a breach of this agreement with Navan Global LLC, (ii) the improper promotion of Products by Navan Global LLC or its respective employees or agents  unless such claim results from the incorrect product profile information supplied by Pure Raw Supplies: or (iii) the violation or infringement of any trademark or trade dress rights relating to  the Products (other than those owned by Pure Raw Supplies and licensed to Navan Global LLC hereunder) or other specifications or materials selected by Navan Global LLC, provided that none of such occurrences are caused by the negligence or willful misconduct of Pure Raw Supplies.

Upon the occurrence of an event which would give rise to a right of indemnification under this Agreement, the party claiming the right to indemnification (the "Indemnitee") shall give prompt written notice to the other party providing reasonable details of the nature of the event and basis of the indemnity claim. The party obligated to provide the indemnification (the "Indemnitor") shall then have the right, at its own expense and with counsel of its choice, to defend, contest or otherwise protect against any such suit, action, investigation, claim or proceeding ("Action"). The Indemnitee shall also have the right, but not the obligation, to participate at its own expense in the defense thereof with counsel of its choice reasonably acceptable to the Indemnitee. The Indemnitee agrees to cooperate to the extent reasonably necessary to assist the Indemnitor in defending, contesting or otherwise protesting against any such Action provided that the reasonable cost in doing so shall be paid by the Indemnitor. If the Indemnitor fails within thirty (30) days after receipt of such notice to (i) notify the Indemnitee of its intent to defend, or (ii) defend, contest or otherwise protect against such Action, or fails to diligently continue to provide such defense after undertaking to do so, the Indemnitee shall have the right upon ten (10) days' prior written notice to the Indemnitor, to defend, settle and satisfy any such Action and recover the costs of the same from the Indemnitor.
The provisions of this Section 15 shall survive the expiration of the Term or any other termination of this Agreement.

The parties shall each maintain in full force and effect throughout the Term product liability insurance with limits of not less than three million dollars ($3,000,000) per occurrence, three million dollars ($3,000,000) in the aggregate.  Such insurance shall name Navan Global LLC and its affiliates as an additional insured, shall have broad form vendor's coverage, and shall be placed with an insurance company which has a most recent rating given by Best's Key Rating Guide of at least an "A" (Excellent) or VII or above, or in such other company as Navan Global LLC may approve.  Each party agrees to promptly deliver certificates of said insurance to the other party.  The insurance required by this Agreement shall be primary with respect to any other insurance available to each party and shall contain a waiver of subrogation by such party's insurance carrier against the other party and its insurance carrier with respect to all obligations assumed by each party pursuant to this Agreement. Each party will provide a copy of any contract of insurance required under this Agreement, upon request from the other party.

15. **Recall**.  If the Product becomes the subject of a recall by any governmental agency or in the event a governmental agency requests or suggests that the Product be withdrawn from any level of the market, or the consumer, or in the event Navan Global LLC  or  Pure Raw Supplies shall deem that such a recall is necessary, Pure Raw Supplies shall indemnify and reimburse Navan Global LLC for:

    a.  All costs and expenses of notifying the trade and/or consumers of said withdrawal to the level of acceptance to the regulatory agency;

    b.  All freight charges actually incurred by Navan Global LLC, or paid by Navan Global LLC to its customer, for retrieval of the Products;

    c.  All service charges or other monies actually paid by Navan Global LLC to its customers in line with normal practices in connection with the retrieval of the Products; and,

    d.  All costs and reasonable counsel fees incurred by Navan Global LLC in connection with such recall or market withdrawal.

As soon as possible after notification of the recall,  Pure Raw Supplies shall replace the recalled Products with salable Products free of charge to Navan Global LLC.  In lieu of replacement, Pure Raw Supplies will, if requested by Navan Global LLC, refund the purchase price of such Products or credit Navan's account therefore.

Navan Global LLC shall indemnify Pure Raw Supplies if a recall or market withdrawal of the Product specifically results from marketing efforts caused by Navan Global LLC or its distributors.  In the event such a recall or market withdrawal would occur, Navan Global LLC shall solely bear all costs related to the event.

In the event of a recall or seizure, neither party shall make any statement to the press or public concerning the matter without first notifying the other of the statement to be made.

16. **Notices**:  Any notices required to be given hereunder shall be deemed to have been given on the date such notice is received, and may be sent by United States Mail, Certified with Return Receipt Requested, by Personal Delivery, by Overnight Courier with delivery confirmation, or by fax transmission with delivery confirmation, to the following:

If to MANUFACTURER:

                         Pure Raw Supplies LLC
                         1537 NW 65th Avenue
                         Plantation FL  33313

If to Client:

                         Navan Global LLC
                         231 Public Square
                         Suite 220
                         Franklin TN 37065

17. **Governing Law & Jurisdiction**:  This Agreement shall be governed by the laws of the State of Tennessee.  In the event an action is brought between the parties hereto for the interpretation or enforcement of this Agreement, such action if brought by Client shall be brought in the State or Federal Courts of Tennessee, in the County of Williamson.

18. **Attorney Fees**: In the event suit or action is brought by either party under this Agreement to enforce any of its terms, or in any appeal therefrom, it is agreed that the prevailing party shall be entitled to an award of its reasonable attorney fees and costs of suit incurred.

19. **Computation of Time**:  In computing any period of time pursuant to this Agreement, the day of the act, event or default from which the designated period of time begins to run shall be included, unless such day is a Saturday, Sunday or legal holiday.  In such event the period shall being to run on the next day which is not a Saturday, Sunday or legal holiday.

20. **Titles & Captions**: All section titles or captions contained in this Agreement are for convenience only and shall not be deemed to be a part of the context nor affect the interpretation of this Agreement.

21. **Agreement Binding**:  This Agreement shall be binding upon the parties hereto, as well as their heirs, administrators, executors, successors and assigns.  This Agreement may not be assigned to any third party without the prior written consent of the other party hereto, which consent shall not unreasonably be withheld.

22. **Authorization**:  Each party hereto warrants that it is in the good standing in the jurisdiction of its origin, and that all necessary formalities required by its organizational and operational documents have been complied with to enter into this Agreement. Each party also warrants to the other that the party executing this Agreement is duly authorized to do so.

23. **Further Actions and Documents**:  Each party agrees that it shall act in good faith and execute such documents and take such actions as may be necessary from time to time to carry out the intent of this Agreement.

24. **Parties in Interest**:  Nothing herein shall be deemed or construed to be for the benefit of any third party.

25. **Force Majure**:  Neither party hereto shall be obligated to perform its obligations herein if such obligations are interrupted by acts of God, war, civil unrest, strikes, labor stoppage, natural disaster or the like that would render the performance of such party impossible.

26. **Entire Agreement**:  This document represents the entire agreement between the parties hereto and supersedes and replaces all other agreements and negotiations regarding the subject matter herein, whether written or oral.  This Agreement may only be modified in writing executed by both parties hereto.

27. **Savings Clause**:  If any provision of this Agreement, or the application of such provision to any person or circumstance, shall be held by any court of competent jurisdiction to be invalid, only so much of the terms as are necessary shall be removed or modified to render the offending term or terms enforceable.  All other terms and conditions of the Agreement shall remain unaffected. In witness whereof, the parties have executed this Agreement effective the day and year first written above.


**Pure Raw Supplies, LLC**                          **Navan Global, LLC**


_____                    _____
Rik J Deitsch                                       By:   Paul Odom
Its:  President                                     Its:   VP Operations